# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3802
_____

| | | |
|---|---|---|
| Strategic Directions Group, Inc., | * | |
| | * | |
| Appellant, | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Bristol-Myers Squibb Company, | * | District of Minnesota |
| | * | |
| Appellee. | * | |

_____

Submitted: October 16, 2001

Filed: June 12, 2002

_____

Before HANSEN, Chief Judge,[1] and McMILLIAN and BEAM, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Strategic Directions Group, Inc. (SDG) appeals from a judgment of the district court[2] granting summary judgment in favor of Bristol-Myers Squibb Company (Bristol-Myers) in this trade secrets and breach of contract case. We affirm.

_____

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

[2]The Honorable David S. Doty, United States District Court for the District of Minnesota.

**BACKGROUND**

SDG is a marketing research company owned and operated by Carol and Doran Levy. Bristol-Myers is a pharmaceutical company which manufactures Pravachol, a drug designed to reduce cholesterol. In 1996, a Bristol-Myers' marketing manager read the Levys' 1993 book, Segmenting the Mature Market, which dealt with marketing strategies for targeting consumers over 50 years old. One chapter of the book dealt with health issues. Based on survey responses to 50 classification questions, the book divided the market into four different kinds of customers, or segments. The classifications questions were statements to which the respondents were asked to agree or disagree, such as "I am careful to eat a balanced diet" and "I believe in getting a yearly physical from my doctor."

In May 1997 Bristol-Myers agreed to pay SDG $275,000 for "a copy of a reduced battery of classification questions for use in connection with the collection of data from persons calling a [Bristol-Myers' toll-free] telephone number" published in Pravachol advertisements. The agreement further provided that the questions were only to be used "in connection with the database collected for Pravachol and only in connection with the [toll-free] telephone number." In June 1997, SDG submitted nine questions relating to diet, medication, medical check-ups, and insurance. Bristol-Myers used some of them in a set of questions posed to callers to the toll-free telephone number. For example, callers to the telephone number were asked to agree or disagree to varying degrees to statements, including "I maintain a regular schedule of medical check-ups with my doctor" and "I am careful to eat a balanced diet." Bristol-Myers also used three of the classification questions in a follow-up survey of persons who had called the toll-free number.

In 1999, SDG filed a complaint against Bristol-Myers, alleging two breach of contract claims and a misappropriation of trade secrets claim in violation of Minn. Stat. § 325C.01. The district court granted Bristol-Myers's motion for summary

judgment as to the trade secret claim and as to one of the breach of contract claims. As to the trade secret claim, the district court held that the nine questions SDG had provided Bristol-Myers were not trade secrets, because they were not secret. Among other things, the district court noted the questions were readily ascertainable in public sources, such as the Levys' 1993 book, SDG annual surveys, and a copyright filing. Indeed, the district court noted that the nine questions SDG claimed were trade secrets were specifically designed for public consumption on the toll-free telephone number. The district court also held that Bristol-Myers had not breached the 1997 agreement contract by using some of the questions in the follow-up survey of callers to the toll-free telephone number. After the parties settled the breach of contract claim concerning Bristol-Myers' use of the questions beyond the agreement's termination date, the district entered a final judgment. SDG filed a timely notice of appeal.

Jurisdiction in the district court was proper under 28 U.S.C. § 1332. Jurisdiction in this court is proper under 28 U.S.C . § 1291.

**DISCUSSION**

"We review a grant of summary judgment de novo, applying the same standard as the district court." American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 110 (8th Cir.1997). Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

The district court did not err in granting summary judgment in favor of Bristol-Myers on SDG's trade secrets claim. To qualify as a trade secret under Minn. Stat. § 325C.01, "(1) the information must not be generally known nor readily ascertainable; (2) the information must derive independent economic value from secrecy; [and] (3) the plaintiff must make reasonable efforts to maintain secrecy."

-3-

Widmark v. Northrup King Co., 530 N.W.2d 588, 592 (Minn. Ct. App. 1995). SDG does not, and could not, dispute that the individual questions were readily ascertainable and that it made no attempt to keep them secret. To the contrary, SDG concedes that the nine questions were in Segmenting the Mature Market and presented in its annual surveys, public seminars, and a copyright filing. Thus, not only did SDG fail to make a reasonable effort to keep the questions secret, it repeatedly placed them in the public domain. Indeed, as the district court noted, the "questions were specifically designed for public consumption." Anyone calling the toll-free telephone number had access to the questions.

SDG argues that even if the individual questions were not trade secrets, their combination was statutorily protected. We disagree. In some cases, a novel or unique combination of elements may constitute a trade secret. Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 899 (Minn. 1983). However, as here, "mere variations on widely used [information] cannot be trade secrets." Id. For example, in Jostens, Inc. v. Nat'l Computer Sys., Inc., 318 N.W.2d 691, 699 (Minn. 1982) the Minnesota Supreme Court held that a computer system was not a trade secret because it was merely a combination of known sub-systems, explaining the combination did not "achieve the degree of novelty or 'unknownness' needed for a trade secret." Such is also the case here. "Simply to assert a trade secret resides in some combination of otherwise known data, is not sufficient. . . ." Id.; see also Julie Research Lab. v. Select Photographic Eng'g, Inc., 998 F.2d 65, 67 (2d Cir. 1993) (combination of design choices was not trade secret because choices "were either obvious, widely known, easy for others to discover legitimately or disclosed in [] sales literature"). Although Bristol-Myers paid SDG for selecting a reduced number of questions from its battery of questions, "[t]he law of trade secrets will not protect talent or expertise, only secret information." Electro-Craft Corp., 332 N.W.2d at 900.

Here, the questions, individually or in combination, were not secret.[3]

We also reject SDG's argument that Bristol-Myers breached the contract by using three of the questions in a follow-up survey. The agreement unambiguously provided that the questions were only "for use in connection with the collection of data from person calling the [toll-free] telephone number" and "only in connection with the database collected for Pravachol." SDG does not dispute that the in the follow-up survey Bristol-Myers only collected data from persons who had called the toll-free number featured in the Pravachol advertisements. Thus, Bristol-Myers acted in accordance with the express terms of the contract.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[3]Although SDG argues that the district court erred by ignoring its expert's opinion that the questions were secret, the district court did not ignore it. Rather, the district court correctly rejected it as without value.