# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3651

_____

Wyeth, formerly known as              *
American Home Products                *
Corporation, a Delaware               *
corporation,                          *
                                      *
          Appellee,                   *
                                      *
     v.                               *
                                      *
Natural Biologics, Inc., a            *
Minnesota corporation,                *
                                      *
          Defendant,                  *
                                      *
Natural Biologics, LLC, a             *
Minnesota limited liability           *
company,                              *
                                      *
          Appellant.                  *

_____

No. 03-3652

_____

Appeals From the United States
District Court for the
District of Minnesota.

Wyeth, formerly known as              *
American Home Products                *
Corporation, a Delaware               *
corporation,                          *
                                      *
          Appellee,                   *
                                      *

|                                        |     |
|----------------------------------------|-----|
| v.                                     | *   |
|                                        | *   |
| Natural Biologics, Inc., a             | *   |
| Minnesota corporation,                 | *   |
|                                        | *   |
| Appellant,                             | *   |
|                                        | *   |
| Natural Biologics, LLC, a              | *   |
| Minnesota limited liability            | *   |
| company,                               | *   |
|                                        | *   |
| Defendant.                             | *   |

_____

Submitted: November 19, 2004
Filed: January 24, 2005

_____

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

_____

HEANEY, Circuit Judge.

Wyeth brought an action against Natural Biologics, Inc. and Natural Biologics, LLC ("Natural Biologics") for misappropriation of a trade secret, in violation of the Minnesota Uniform Trade Secrets Act, Minnesota Statute sections 325C.01 – .08 ("MUTSA"). Wyeth alleged that Natural Biologics illegally acquired Wyeth's trade secret process for producing bulk natural conjugated estrogens used in the development of Premarin, the only hormone replacement therapy drug on the market

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.

-2-

derived from a natural source.[2]  In an order dated September 12, 2003, the district court[3] found that Natural Biologics misappropriated Wyeth's trade secret process, and permanently enjoined Natural Biologics from using or disclosing any information it obtained related to Wyeth's process.  Natural Biologics appeals, asserting that:  (1) Wyeth failed to protect the secrecy of its trade secret, (2) Wyeth is barred by the three-year statute of limitations period under Minnesota Statute section 325C.06 from raising its trade secret misappropriation claim, and (3) the district court abused its discretion by permanently enjoining Natural Biologics from using the misappropriated trade secret.  We affirm the district court.

Wyeth manufactures and sells Premarin, which is prescribed for the treatment of symptoms associated with menopause.  Premarin has been on the market since 1942 without any natural generic substitute.  Wyeth manufactures natural conjugated estrogens at its Brandon, Manitoba facility using a process called the Brandon Process.

Natural Biologics, founded by David Saveraid, manufactures natural conjugated estrogens.  In 1991, Saveraid began to explore manufacturing conjugated estrogens, and over a decade later, in March 2002, Natural Biologics entered into an agreement with Barr Laboratories, Inc., under which Barr agreed to purchase material from Natural Biologics and convert the material into a tablet to sell as a generic form of Premarin, pending FDA approval.  Natural Biologics claims to have independently developed its extraction process through review of Wyeth's expired patents, scientific literature, and Wyeth's Brandon Facility waste manifests, which reveal the names and volumes of chemicals used at the Brandon Facility.  Saveraid also collaborated with

_____

[2]The key ingredient for Premarin is made by extracting conjugated estrogens from pregnant mare urine ("PMU").

[3]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

scientists and pharmaceutical companies to develop Natural Biologics's process. In October 1994, Saveraid began communication with former Wyeth chemist Dr. Douglas Irvine, and within a year, Natural Biologics's extraction process yielded material that was the same as Premarin.

I.  The Brandon Process As a Trade Secret

We review the district court's findings of fact for clear error.  Vekamaf Holland B.V. v. Pipe Benders, Inc., 696 F.2d 608, 610 (8th Cir. 1982).  We must first decide whether the district court erred in holding that Wyeth's Brandon Process is a trade secret.  Under MUTSA, a trade secret is information that:  (1) is not generally known or readily ascertainable, (2) has value as a result of its secrecy, and (3) is the subject of reasonable efforts under the circumstances to protect its secrecy.  Minn. Stat. § 325C.01, subd. 5.

Natural Biologics apparently concedes that the Brandon Process is not generally known or readily ascertainable, and that it has value as a result of its secrecy.  It contends, however, that Wyeth failed to adequately secure its trade secret in many ways: non-Wyeth employees toured the Brandon Facility without having signed confidentiality agreements; there were no posted signs inside the facility indicating that the Brandon Process information was confidential; unmarked[4] Brandon Process documents were left on the manufacturing floor and unsecured in Wyeth's Brandon Facility; not all Wyeth employees or vendors involved in the Brandon Process signed confidentiality agreements; Wyeth identified chemicals used in the extraction process in two newsletters; unmarked documents were sent to third parties; and Wyeth allegedly failed to follow its own security policies.

---

[4]Documents not identified as trade secrets or as confidential are considered unmarked.

The district court held that the Brandon Process is a trade secret, and that Wyeth had implemented reasonable efforts to maintain the secrecy of the Brandon Process. The court noted that no one had previously duplicated the Brandon Process, and found it unlikely that Natural Biologics had succeeded in doing so legally. The court explained,

> Based on the lack of repeated losses of confidential information regarding the Brandon Process and Wyeth's use of physical security, limited access to confidential information, employee training, document control, and oral and written understandings of confidentiality, the Court concludes that Wyeth subjected the Brandon Process to efforts that are reasonable under the circumstances to maintain its secrecy.

(Order at 41.) Absolute secrecy is not required by MUTSA. See Surgidev Corp. v. Eye Tech., Inc., 828 F.2d 452, 455 (8th Cir. 1987) ("Only reasonable efforts, not all conceivable efforts, are required to protect the confidentiality of putative trade secrets."); Lasermaster Corp. v. Sentinel Imaging, 931 F. Supp. 628; 635 (D. Minn. 1996) (noting "absolute secrecy" is not required to maintain trade secret's confidential nature). Furthermore:

> The existence of a trade secret is not negated merely because an employee or other person has acquired the trade secret without express or specific notice that it is a trade secret if, under all the circumstances, the employee or other person knows or has reason to know that the owner intends or expects the secrecy of the type of information comprising the trade secret to be maintained.

Minn. Stat. § 325C.01, subd. 5. Having considered the totality of the circumstances, we hold the court below did not clearly err in finding that Wyeth took appropriate steps to maintain the secrecy of the Brandon Process.

We next consider whether Natural Biologics misappropriated the Brandon Process. A defendant is liable for misappropriation of a trade secret if the defendant

has acquired the trade secret through improper means. Minn. Stat. § 325C.01, subd. 3. In some instances, the secret is so unique that the emergence of a similar, slightly altered product gives rise to an inference of misappropriation. See Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc., 35 F.3d 1226, 1239-40 (8th Cir. 1994) (interpreting similar Iowa state trade secret law).

David Saveraid engaged in communications with Dr. Irvine from October 1994 through early 1996. Saveraid's subsequent attempts to conceal such communications, Natural Biologics's financial motives for copying the Brandon Process, Saveraid's questionable ability to develop an extraction process identical to the Brandon Process,[5] the similarity between the Brandon Process and Natural Biologics's process, and the absence of a credible record of how Natural Biologics developed its extraction process, support the district court's conclusion that Natural Biologics acquired Wyeth's trade secret through improper means. Although Natural Biologics may have devoted its own resources and ingenuity to the development of an extraction process, this is irrelevant because Natural Biologics also engaged in illegal conduct by misappropriating Wyeth's trade secret. Concluding that the district court's holding that Natural Biologics misappropriated the Brandon Process was not clearly erroneous, we affirm on this matter.

II. Statute of Limitations

Natural Biologics next asserts that Wyeth's misappropriation claim is barred by MUTSA's statute of limitations. "An action for misappropriation must be brought

---

[5]Saveraid devoted most of his professional life to agricultural sales and had no prior work experience in chemistry. We agree with the district court that he "was not qualified to independently develop a process that is the same as the Brandon Process." (Order at 19-20.)

within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Minn. Stat. § 325C.06 (2000).

Natural Biologics argues that Wyeth should have discovered its claim before November 17, 1995, more than three years prior to the commencement of the action. It asserts that Wyeth received a brochure from Natural Biologics in August 1994 announcing that Natural Biologics was in possession of a trade secret for the estrogen extraction process. In September 1994, Dr. Michael Dey, vice president and general manager of a generic subsidiary of Wyeth, ESI Pharma, called David Saveraid about Natural Biologics's products, and in December 1994, Saveraid left Dr. Dey a voice message regarding natural conjugated estrogen supply, the pilot manufacture of material, and whether Wyeth might be interested in Natural Biologics's supply. Natural Biologics asserts that had Wyeth been diligent, and had it accepted Saveraid's offer to supply material, or even requested a product sample from Natural Biologics, it would have had enough evidence of misappropriation to file a lawsuit by September 1995.

The district court found that before November 17, 1995, Wyeth had only four sources of information about Natural Biologics: (1) the Natural Biologics marketing brochure; (2) Dr. Dey's telephone conversation with David Saveraid; (3) the previously mentioned voice message to Dr. Dey; and (4) Ken Saveraid's[6] telephone contact with the Brandon plant's field supervisor, Ross Chambers. Assuming that the misappropriation took place sometime in 1995, after Saveraid had been in communication with Dr. Irvine and had altered Natural Biologics's extraction process according to those conversations, the misappropriation had not occurred when Wyeth received the brochure in 1994 or when Dr. Dey and Saveraid spoke in late 1994. Furthermore, the court determined that Wyeth regarded the brochure as an

_____

[6]Ken Saveraid is David Saveraid's father. Throughout the opinion, "Saveraid" refers to David Saveraid.

announcement of a PMU collection business that could compete in the bulk natural conjugated estrogens market, not an announcement that Natural Biologics had obtained the Brandon Process.

With regard to the last two sources of information related to Natural Biologics's activities, Wyeth argues that Saveraid's December 1994 telephone message to Dr. Dey revealed nothing about Natural Biologics's extraction process, and that in Ken Saveraid's conversation with Chambers in September 1995, he mentioned Natural Biologics's use of the "Chicago Process" method of extraction, which could have been an entirely independent process. The record does not suggest that prior to November 17, 1995, Wyeth knew or should have known facts sufficient to support a lawsuit against Natural Biologics for trade secret misappropriation.

We hold that the district court did not clearly err in concluding that Wyeth had no knowledge of any misappropriation prior to November 17, 1995, and that its claim was therefore not barred. The Natural Biologics brochure had been drafted and sent before Saveraid's first contact with Dr. Irvine, and presumably before the misappropriation had occurred. The brochure did not reveal that Natural Biologics had misappropriated the Brandon Process. In September 1994, when Dr. Dey and Saveraid spoke on the telephone, the court determined that Saveraid had not disclosed any information about the process Natural Biologics was using at the time. Furthermore, that conversation occurred prior to Saveraid's contact with Dr. Irvine, and therefore also before the misappropriation had occurred. The court concluded that the voice message to Dr. Dey and phone call to Chambers could not have alerted the Wyeth employees to Natural Biologics's misappropriation of the Brandon Process. Wyeth knew nothing about how Natural Biologics had developed its extraction process, or who had assisted the company in developing the process. Additionally, product samples were unavailable before November 17, 1995, and Wyeth thus could not have confirmed any suspicions that Natural Biologics had

misappropriated its trade secret. We therefore affirm the district court on this matter as well.

## III. Equitable Relief

Misappropriation of a trade secret constitutes irreparable harm that, under certain circumstances, warrants injunctive relief to prevent the misappropriator from selling or manufacturing the product embodying the secret. Minn. Stat. § 325C.02. We review the court's grant of injunctive relief for an abuse of discretion. See FDIC v. Bell, 106 F.3d 258, 262-63 (8th Cir. 1997).

At oral argument Natural Biologics asserted its right to oppose Wyeth's request for equitable relief. In paragraph 23 of its Conclusions of Law, the district court held that because Natural Biologics concealed its misappropriation of the Brandon Process, it has unclean hands, and was therefore not entitled to the equitable defenses of laches, unclean hands, waiver, or estoppel. The doctrine of "unclean hands" bars a party who acted inequitably from obtaining equitable relief. Heidbreder v. Carton, 645 N.W.2d 355, 371 (Minn. 2002); Gully v. Gully, 599 N.W.2d 814, 825 (Minn. 1999). However, the party with unclean hands is not barred from opposing a request for equitable relief by the other side. Heidbreder, 645 N.W.2d at 371.[7] Natural Biologics is entitled to oppose Wyeth's request for a permanent injunction.

Natural Biologics asserts that the district court abused its discretion by issuing a permanent injunction against all activity related to the development of natural

---

[7]Heidbreder involves a paternity action in which the biological mother allegedly promised she would not place her unborn child for adoption, and then rescinded that promise after she moved to an undisclosed location. The biological father invoked the doctrine of estoppel, and claimed the mother could not oppose equitable relief because of her unclean hands. The court held otherwise, finding the mother's unclean hands irrelevant to the father's request for equitable relief.

conjugated estrogens. It concedes that temporary injunctions may be appropriate for a reasonable period of time to eliminate commercial advantage from the misappropriation, see Minn. Stat. § 325C.02(a), but claims that a permanent injunction imposes unnecessary hardship against it. An injunction for trade secret misappropriation, it argues, should continue only for the approximate period of time it would take a legitimate competitor, either by independent development or reverse engineering, to develop a successful product or process without the use of plaintiff's trade secret. See Cherne Indus., Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 93 (Minn. 1979).

The district court held that the misappropriation would cause Wyeth irreparable harm in the form of loss of market share, physician relationships, and control over the trade secret unless an injunction issued against Natural Biologics. It issued an injunction against Natural Biologics because:

> Natural Biologics attempted to conceal its misappropriation of the Brandon Process by destroying evidence, giving false testimony, and improperly redacting evidence[.] [T]he Court concludes that Natural Biologics cannot be trusted to avoid using the misappropriated process and cannot be trusted to obey an Order that permits them to exercise any discretion. Accordingly, the Court concludes that the scope of the injunction requested by Wyeth is appropriate.

(Order at 52.) The district court reasoned that a permanent injunction was appropriate because "[i]n its decades-long history, nobody has legitimately replicated the Brandon Process despite its value." Id. at 52-53. Having thoroughly considered Natural Biologics's conduct and arguments, we hold that the district court did not abuse its discretion in issuing a permanent injunction against Natural Biologics.[8]

---

[8]We note, however, that MUTSA contemplates that under certain circumstances, Natural Biologics may move for termination of the injunction. Minn. Stat. § 325C.02(a).

For the reasons cited above, we affirm the district court.

_____