# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3444

_____

AvidAir Helicopter Supply, Inc.,     *
           *
      Plaintiff - Appellant,     *
           *
           *    Appeal from the United States
     v.                 *    District Court for the
           *    Western District of Missouri.
Rolls-Royce Corporation,        *
           *
      Defendant - Appellee.     *
           *
           *

_____

Submitted: September 20, 2011
Filed: December 13, 2011

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

This appeal comes to us from two consolidated suits brought under the Uniform Trade Secrets Acts of Indiana and Missouri. Both suits involve information about the repair and overhaul of helicopter engines published by Appellee Rolls-Royce Corp. Rolls-Royce sought damages and injunctive relief for alleged trade secret violations. Appellant AvidAir Helicopter Supply Inc. sought a declaration that the information in question was not protected by trade secret law. AvidAir also alleged that Rolls-Royce had violated antitrust laws and tortiously interfered with its

business interest. In multiple summary judgment rulings below, the district court[1] held in favor of Rolls-Royce by finding that some, though not all, of the information in question was a protected trade secret. The court ruled against AvidAir on its antitrust and tortious interference claims. A jury later awarded Rolls-Royce $350,000 in actual damages, and the court issued a permanent injunction requiring AvidAir to return the protected documents to Rolls-Royce. AvidAir appeals the rulings. For the reasons stated below, we affirm.

I.

Rolls-Royce Corp. develops and produces the Model 250 engine used in civilian and military helicopters. Before 1994, Rolls-Royce's predecessor, Allison Engine Co., did not exert tight control over access to the technical information required in the repair and overhaul market for these engines. This led to the development of third-party overhaul shops. AvidAir is a Missouri company that entered the repair and overhaul market in 1994. AvidAir's business focuses on the overhaul of compressor cases, one of three modules in the Model 250 engine.

Federal regulations require that an overhauled engine be certified for return to service. In order to certify the return to service for a Model 250 engine, an overhaul shop must follow a procedure that has been approved by the Federal Aviation Administration (FAA). The approved overhaul procedure for the Model 250 requires, *inter alia*, details about processes, procedures, techniques and material specifications contained in Distributor Overhaul Information Letters (DOILs) issued first by Allison, and later by Rolls-Royce.[2] DOIL 24 related specifically to the compressor

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]The parties occasionally refer to the letters as OILs, or AMC-OILs. Following the district court, we will refer to the documents as DOILs for the sake of clarity.

case, and like the other DOILs, it was periodically updated through numbered revisions. Because Allison had not restricted the redistribution of earlier revisions, AvidAir was able to acquire DOIL 24, Revisions 1 through 7 from various sources sometime in the 1990s.

In 1994, Allison began to restructure its approach to the overhaul of Model 250 engines. Allison appointed twenty-five Authorized Maintenance Centers (AMCs) to whom it would exclusively issue technical information (such as DOILs and other overhaul manuals). Allison executed agreements with each AMC that specified the proprietary nature of this technical information, prohibited the AMCs from disseminating this information, and required the AMCs to return all proprietary documents at the end of their relationship. Allison also began including a proprietary rights legend on the front page of its DOILs. All of the documents at issue on appeal contain this rights legend.

Rolls-Royce, plc. acquired Allison in 1995 and eventually changed its name in 2002 to Rolls-Royce Corp. Rolls-Royce issued a cease and desist letter to AvidAir in 2002, demanding it stop using DOIL 24 in its overhaul of Model 250 engines. In 2003, the FAA responded to a Rolls-Royce complaint by inspecting AvidAir's overhaul process. The FAA found that AvidAir was not following the latest approved overhaul instructions contained in DOIL 24, Revision 13. Because AvidAir was not an AMC, it had never been authorized to receive a copy of the latest DOIL. After the FAA inspection, AvidAir eventually obtained a copy of DOIL 24, Revision 13 without Rolls-Royce's permission. Though there is a dispute about the extent to which AvidAir changed its overhaul procedure after obtaining Revision 13, AvidAir admits that it made adjustments for new measurements contained within Revision 13,

and it certified to the FAA that it was in compliance with the document. AvidAir also obtained copies of other DOILs, though not all are at issue in this appeal.[3]

On September 29, 2006, AvidAir filed suit in the Western District of Missouri seeking a declaration that Rolls-Royce's DOILs were not trade secrets and alleging that Rolls-Royce violated antitrust laws and tortiously interfered with its business. According to AvidAir, DOIL 24 Revision 13 was substantially the same as earlier, publicly available revisions. On October 2, 2006, Rolls-Royce filed its own suit against AvidAir in the Southern District of Indiana for trade-secret violations under the Lanham Act. In 2007, both cases were consolidated and eventually transferred to the Western District of Missouri. The issues were bifurcated, and both parties filed for partial summary judgment as to the trade-secret status of DOIL 24. This issue was submitted to a magistrate judge[4] for determination. On April 7, 2009, the magistrate judge issued a report and recommendation that the district court grant summary judgment in favor of Rolls-Royce as to DOIL 24, Revision 13 (finding it was a protected trade secret) but grant AvidAir summary judgment on Revisions 1–10 (finding they were not trade secrets). On June 23, 2009, the district court adopted the report in full.[5]

---

[3]The district court's misappropriation orders involved DOIL 24, Revisions 12 and 13; DOIL 3, Revision 16, and DOIL 8; Revision 6. The court's injunction order applied to these four DOILs, as well as BookFax 97-AMC-059, which was a notice of a change to DOIL 24, Revision 12 that became part of DOIL 24, Revision 13. Rolls-Royce withdrew its claims on all other DOILs.

[4]The Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri.

[5]The district court also adopted the report's finding that it should deny AvidAir's motion for summary judgment with respect to Revisions 11 and 12. Though the record supported a finding that Revision 12 was a trade secret, Rolls-Royce had not yet asked for summary judgment on that issue. On September 28, 2009, the court granted summary judgment in favor of Rolls-Royce as to Revision 12.

On June 20, 2009, AvidAir acquired a full technical library from Precision Air Power, which was a branch of a Rolls-Royce AMC. Relying on this acquisition, AvidAir filed a motion to reconsider the district court's Order of June 23, 2009 and a motion for leave to amend the complaint. AvidAir argued that its purchase of Precision's library demonstrated AMCs were not restricted from distributing information pertaining to the Model 250 engine and that the information was therefore in the public domain. The court found that the proprietary-rights legends on the documents, as well as Rolls-Royce's AMC Agreement (under which Precision was prohibited from disclosing confidential materials) contradicted this argument. The district court concluded that the time for amending the pleadings was long passed, and on September 23, 2009, it denied AvidAir's motion in full.

Both parties again filed motions for summary judgment, and the district court granted motions in favor of Rolls-Royce on AvidAir's antitrust claim, AvidAir's tortious interference claim, and Rolls-Royce's trade secret claims involving DOIL 3 and DOIL 8. The issue of damages was submitted to a jury, which awarded Rolls-Royce $350,000 in actual damages. After the jury award, the district court granted in part Rolls-Royce's Motion for Permanent Injunction. Pursuant to the injunction, AvidAir is required to return all of Rolls-Royce's trade secrets, but AvidAir is not prevented from continuing to operate in the Model 250 overhaul market according to procedures developed from publicly available knowledge.

AvidAir appeals the court's rulings.

II.

AvidAir presents many issues on appeal, though the principal issue before us is whether the district court erred in granting Rolls-Royce summary judgment on its trade secret claims. We review grants of summary judgment de novo, applying the same standard as the district court. Strategic Directions Grp., Inc. v. Bristol-Myers

-5-

Squibb Co., 293 F.3d 1062, 1064 (8th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court. Steve Silveus Ins., Inc. v. Goshert, 873 N.E.2d 165, 179 (Ind. Ct. App. 2007); Lyn-Flex West, Inc. v. Dieckhaus, 24 S.W.3d 693, 698 (Mo. Ct. App. 1999). Under the Uniform Trade Secrets Act (UTSA), which has been adopted by both Indiana and Missouri,[6] a trade secret is:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code § 24-2-3-2; see also Mo. Rev. Stat. § 417.453(4).

---

[6]The present appeal is a consolidation of two cases filed in Indiana and Missouri. The district court determined that because both states had adopted the UTSA, and because both states approved of reliance on decisions from other UTSA jurisdictions, it was unnecessary to determine which state's law governed the existence of a trade secret and looked to case law from both states. The parties do not contest this conclusion, and we will follow the same approach.

The district court found the DOILs[7] were compilations of publicly available information and new proprietary information. Compilations are specifically contemplated in the UTSA definition of a trade secret, and the fact that some or even most of the information was publicly available is not dispositive of the first factor in the UTSA definition. Compilations of non-secret and secret information can be valuable so long as the combination affords a competitive advantage and is not readily ascertainable. See Amoco Prod. Co. v. Laird, 622 N.E.2d 912, 919–20 (Ind. 1993). Compilations are valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in its compilation gives a business a competitive advantage. Id.; N. Elec. Co. v. Torma, 819 N.E.2d 417, 426 (Ind. Ct. App. 2004); Lyn-Flex West, 24 S.W.3d at 699. This value is not dependent on how much of the information is otherwise unavailable because "the effort of compiling useful information is, of itself, entitled to protection even if the information is otherwise generally known." Torma, 819 N.E.2d at 426; see also Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1291 (11th Cir. 2003) ("[E]ven if all of the information is publicly available, a unique combination of that information, which adds value to the information, also may qualify as a trade secret."). But see Nationwide Mut. Ins. Co. v. Mortensen, 606 F.3d 22, 29 (2d Cir. 2010) (denying trade secret protection for information that had merely changed in form but not substance).

---

[7]The Report and Recommendation of April 7, 2009 and the district court Order of June 23, 2009, both focus exclusively on DOIL 24. The district court later used the DOIL 24 analysis as a "framework" for resolving the trade secret status of DOIL 3, Revision 16; DOIL 8, Revision 6; and the BookFax. See Order of September 9, 2009 at *4. Though the record is more developed for DOIL 24 than the other documents, AvidAir did not challenge the district court's use of this framework for analysis. Instead, AvidAir maintains the same argument for all of the documents—that the changes were too small to be valuable, and that the documents were not protected by confidentiality agreements. We will therefore consider the analysis as it applies to all of the documents, even though much of the record specifically refers to DOIL 24.

AvidAir argues that the DOILs cannot provide independent economic value because there is only a trivial amount of information that was not readily ascertainable from prior revisions. Such a trivial amount of information, AvidAir contends, offers no engineering advances from previous revisions. As the above-cited cases demonstrate, though, existence of a trade secret is determined by the value of a secret, not the merit of its technical improvements. Unlike patent law, which predicates protection on novelty and nonobviousness, trade secret laws are meant to govern commercial ethics. See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 489–90 (1974) (noting this as the reason why trade secret protection is weaker than patent protection); Water Servs., Inc. v. Tesco Chems., Inc., 410 F.2d 163, 172 (5th Cir. 1969) ("'[Trade Secret] protection is not based on a policy of rewarding or otherwise encouraging the development of secret processes or devices. The protection is merely against breach of faith and reprehensible means of learning another's secret. For this limited protection it is not appropriate to require also the kind of novelty and invention which is a requisite of patentability.'" (quoting Restatement of Torts § 757 cmt. b (1939))); 1-1 Roger M. Milgrim & Eric E. Bensen, Milgrim on Trade Secrets § 1.08 (2011). But see Kewanee Oil, 416 U.S. at 481–82 (acknowledging that maintaining standards of commercial ethics and encouraging invention "are the broadly stated policies behind trade secret law"). Trade secret protection does not shield an idea from "infringing" other uses of the idea; instead it protects valuable information from being misappropriated despite reasonable efforts to keep it secret. In the present case, we need not examine whether the documents introduce significant engineering differences so long as it is established that the documents have a value independent of older publicly available versions.

The UTSA states that a trade secret derives its value from not being readily ascertainable. Ind. Code § 24-2-3-2; Mo. Rev. Stat. § 417.453(4). The fact that information can be ultimately discerned by others—whether through independent investigation, accidental discovery, or reverse engineering—does not make it unprotectable. See Laird, 622 N.E.2d at 918 ("Even if information potentially could

have been duplicated by other proper means, it is no defense to claim that one's product could have been developed independently of plaintiff's, if in fact it was developed by using plaintiff's proprietary designs.") (internal quotation marks omitted). Instead, the court must look at whether the duplication of the information would require a substantial investment of time, effort, and energy. Id. at 919–20. AvidAir does not dispute that the revised DOILs were updated as a result of Rolls-Royce's own research and testing, or that AvidAir avoided the burdensome expense of reverse engineering the updated specifications contained in the DOILs by simply acquiring the documents that Rolls-Royce claimed were protected. AvidAir instead contends that the changes were too trivial to create any value.

We disagree. The value of Rolls-Royce's documents is apparent when a shop is required to certify the return to service for an overhauled engine. To certify to the FAA that the overhaul was completed in accordance with an FAA-approved procedure, that shop must have updated technical information for the engine. AvidAir claims that it can obtain FAA approval for a procedure that is based on only publicly available information, and if this is true, AvidAir may be free to do so. This is, however, not what AvidAir did. Instead of obtaining FAA approval based on an independent investigation of changes to the approved procedure, AvidAir simply appropriated the documents it knew were claimed to be trade secrets and then certified that its procedure was in compliance with the updated documents. Indeed, even after the district court adjudicated the trade secret status of DOIL 24, Revision 13, AvidAir again misappropriated it and other documents from Precision, claiming it did so lawfully in order to benefit from Rolls-Royce's efforts to update proprietary information. AvidAir's repeated attempts to secure the revised DOILs without Rolls-Royce's approval belies its claim that the information in the documents was readily ascertainable or not independently valuable.

The second factor we must consider is whether Rolls-Royce established reasonable efforts to maintain the secrecy of its DOILs. Reasonable efforts to

maintain secrecy need not be overly extravagant, and absolute secrecy is not required. Torma, 819 N.E.2d at 428; Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp., 759 N.E.2d 239, 246 (Ind. Ct. App. 2001). The use of proprietary legends on documents or the existence of confidentiality agreements are frequently-considered factors in establishing or denying a trade secret claim. See, e.g., Wyeth v. Natural Biologics, Inc., 395 F.3d 897, 899–900 & n.4 (8th Cir. 2005) (applying Minnesota UTSA); Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1334–35 (N.D. Ga. 2007) (applying Georgia UTSA); Nilssen v. Motorola, Inc., 963 F. Supp. 664, 679–80 (N.D. Ill. 1997) (applying Illinois UTSA). Misplaced trust in a third party who breaches a duty of confidentiality does not necessarily negate efforts to maintain secrecy. Torma, 819 N.E.2d at 428; see also Kewanee Oil, 416 U.S. at 475 ("This necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another in confidence, and under an implied obligation not to use or disclose it." (internal quotation marks omitted)).

It is undisputed that all of the documents in question were labeled with proprietary-rights legends. Though AvidAir claims the documents were "freely available" in the industry, it failed to present any evidence that Rolls-Royce actually distributed them to a party not bound by confidentiality agreements. We agree with the district court that these were reasonable efforts to maintain secrecy. AvidAir maintains that the DOILs were possessed "without restriction" by others, but this argument is unsupported by the record. All the record reflects is that AvidAir either acquired the documents from others who were not authorized to provide AvidAir with the documents, or acquired the documents from others who had themselves misappropriated the documents. The fact that a trade secret was successfully misappropriated does not defeat the fact that there were reasonable efforts to maintain its secrecy. See Wyeth, 395 F.3d at 900 ("'The existence of a trade secret is not negated merely because an employee or other person has acquired the trade secret without express or specific notice that it is a trade secret if, under all the circumstances, the employee or other person knows or has reason to know that the

-10-

owner intends or expects the secrecy of the type of information comprising the trade secret to be maintained.'" (quoting Minn. Stat. § 325C.01, subd. 5)).

AvidAir devotes a great deal of attention to its acquisition of Precision's technical library, and it argues that Precision was not bound by the AMC Agreement originally entered into by Allison. The AMC Agreement noted in ¶ 6.2 that Allison would provide "general technical data and other Manuals (as referenced in the Manual List)," and that "[s]uch material may be Allison proprietary and may bear appropriate copyright and Marks restrictions. No distribution of this material is to be made outside Authorized Maintenance Center Business Operation(s) except as provided in each document, the Policy Manual or as specifically Authorized by Allison." AvidAir contends that, because the "Manual List" appended to the agreement does not list the DOILs, this restriction does not apply to them. Rolls-Royce argues that the "Manual List" is exemplary and not exhaustive. Viewing the Agreement in the light most favorable to AvidAir, we conclude that the absence of DOILs on the "Manual List" does not support AvidAir's contention. The Agreement unambiguously applies to "general technical data," which covers the DOILs regardless of whether they were or were not defined as "Manuals." The AMC Agreement does not excuse AvidAir from misappropriating trade secrets.[8]

---

[8]AvidAir's Motion for Leave to Amend was part and parcel of its argument that Rolls-Royce did not exert reasonable efforts to maintain the secrecy of its proprietary information. AvidAir attempted to demonstrate that it lawfully obtained the documents in question from Precision's technical library after proceedings had already been underway, and it sought to expand its claims under this argument. The court reviews a denial of a motion for leave to amend under an abuse of discretion standard. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 755 (8th Cir. 2006). The district court concluded that "there is no just reason to continuously amend the pleadings to encompass events and transactions that occurred after the case was filed." Order of September 23, 2009. Because AvidAir was merely trying to reassert arguments that had already been considered and dismissed by the court, this was not an abuse of discretion.

AvidAir argues that Rolls-Royce is attempting to reclaim and remove information that was previously available in public. All of the information in earlier revisions that was already available to the public, however, is still available to the public. The district court ruled that DOIL 24, Revisions 1 through 10 were not trade secrets. Giving protection for Revision 13 does not make it a misappropriation to acquire Revision 1, which contains some of the same information. But the fact that some of the information is available in Revision 1 does not give AvidAir the right to misappropriate the entirety of Revision 13, which has a separate value to competitors because of FAA regulations. AvidAir is not entitled to the value of the proprietary revised documents, even if the new technical specifications are relatively minor in the context of the overhaul process as a whole.

III.

Having concluded that the documents in question were protected trade secrets, the district court did not err in granting an injunction in favor of Rolls-Royce.We review a grant of permanent injunction for abuse of discretion. Kennedy Bldg. Assocs. v. CBS Corp., 476 F.3d 530, 533 (8th Cir. 2007). We will affirm a grant of injunctive relief unless the district court "'clearly erred in its characterization of the facts, made a mistake of law, or abused its discretion in considering the equities.'" South Dakota v. Ubbelohde, 330 F.3d 1014, 1026 (8th Cir. 2003) (quoting Bhd. of Maint. of Way Emp., Lodge 16 v. Burlington N. R.R. Co., 802 F.2d 1016, 1020 (8th Cir. 1986)). Under the UTSA, "[a]ctual or threatened misappropriation may be enjoined." Ind. Code § 24-2-3-3(a); Mo. Rev. Stat. § 417.455.1.

AvidAir offers no argument as to how the district court abused its discretion, other than reiterating that the trade secrets were obtained lawfully, and thus not misappropriated. The district court found, and we agree, this argument was not supported by the record. Furthermore, the injunction granted by the court was narrow and minimized the hardship imposed on AvidAir. The injunction requires AvidAir

to return all proprietary information, but did not enjoin AvidAir from using a separate overhaul process developed from publicly available information. If, as AvidAir argues, it can obtain FAA approval for a process that uses only publicly available information, it may be free to do so. This injunction merely prevents AvidAir from enjoying the unfettered benefits of Rolls-Royce's efforts to update the process.

IV.

AvidAir also challenges the district court's grant of summary judgment for Rolls-Royce on AvidAir's antitrust and tortious interference claims. The standard of review for summary judgment determinations is de novo. Strategic Directions Grp., Inc., 293 F.3d at 1064. We conclude that AvidAir's claims were both resolved by the district court's determination that the documents were trade secrets.

AvidAir's antitrust claim was based on its theory that Rolls-Royce's trade secret suit was a sham litigation in violation of Sherman Act §§ 1 and 2. The Supreme Court has held that those who petition the courts for redress are generally immune from antitrust liability, unless the lawsuit "is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961). In order to determine whether a lawsuit is a sham, the Court established a two-part test. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). Only if the lawsuit is baseless does the court look to the second, subjective factor of whether the baseless lawsuit was "'an attempt to interfere *directly* with the business relationships of a competitor.'" Id. at 60–61 (quoting Noerr, 365 U.S. at 144).

AvidAir's argument that Rolls-Royce attempted to interfere with its business by improperly seeking trade secret protection does not pass the first prong of the

sham litigation test. A lawsuit that leads to a jury award of $350,000 is not objectively baseless, even if it did not succeed on each claim of the complaint. See id. at 60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). Indeed, AvidAir essentially concedes that this argument must fail if we do not reverse the district court's trade secret ruling. Because we affirm the district court's rulings on Rolls-Royce's trade secrets, we also affirm the dismissal of AvidAir's antitrust claim.

Rolls-Royce's success in establishing its trade secrets likewise defeats AvidAir's tortious interference claim. For AvidAir to succeed under a theory of tortious interference, it must prove, "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) (en banc). To satisfy the justification element of an interference claim, AvidAir must demonstrate that Rolls-Royce "lacked a legal right to justify [its] actions." Horizon Mem'l Grp., L.L.C. v. Bailey, 280 S.W.3d 657, 662 (Mo. Ct. App. 2009). However, not only does ownership of a valid trade secret justify an attempt to protect a trade secret, good faith efforts to enforce legal rights are even justified when a court later decides the claimed rights don't actually exist. See, e.g., Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 614 (Mo. 2006) (en banc). Rolls-Royce had a legal right to protect its trade secrets and did not lack justification for its actions. Even though Rolls-Royce abandoned its claims about other DOILs, its success on the claims now on appeal is enough to establish its good faith in bringing suit. The district court did not err in concluding that AvidAir had failed to establish tortious interference.

V.

For the foregoing reasons, we affirm the judgment of the district court.

_____

-14-