# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2594WM

_____

Gerald Alumbaugh,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　Appellant,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　　　*　On Appeal from the United
　　　　　　　　　　　　　　　　　　*　States District Court
　　　　　　　　　　　　　　　　　　*　for the Western District
Union Pacific Railroad Company　　　*　of Missouri.
and The Goodyear Tire and Rubber　　*
Company,　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　Appellees.　　　　　　　*

_____

Submitted: January 16, 2003
Filed: March 7, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


This suit arises out of a motorcycle accident at a railroad crossing. On his way to work, Gerald Alumbaugh drove his motorcycle north along Fairfax Trafficway in Kansas City, Kansas, a route which he customarily took. As he drove over the tracks of the "Quindaro" crossing, he was thrown violently from his motorcycle when it twisted beneath him. He attributes the crash to a visible unevenness created in the rail crossing by deterioration of the rubber rail-crossing equipment, which caused a

portion of the crossing to sink. He contends that the accident was a direct result of a defect in the surface of the railroad crossing. Union Pacific maintains the railroad crossing at Quindaro and Fairfax Trafficway. It is constructed of component rubber parts manufactured by Goodyear, collectively known as "Goodyear's Super Cushion rubber railroad crossing pad product." Goodyear circulated advertising materials and installation and procedures manuals which focused on the advantages of this equipment.

As a result of the accident, Mr. Alumbaugh was severely and permanently injured. He brought claims of negligence and negligence per se against Union Pacific, and claims of breach of the duty to warn or furnish written instructions and breach of express warranty against Goodyear. The District Court held, under Missouri's choice-of-law rules, that Kansas law governed the substantive issues in this case and granted summary judgment for both Goodyear and Union Pacific. We affirm with respect to Goodyear and reverse with respect to the negligence claim against Union Pacific.

This Court reviews a District Court's grant of summary judgment de novo. If there is any reasonable construction of the facts which would entitle the nonmoving party to prevail, a grant of summary judgment will not be sustained.

I.

Since Missouri is the forum state, its choice-of-law rules apply in cases, like the present one, where the law of some state supplies the rule of decision. Dorman v. Emerson Elec. Co., 23 F.3d 1354, 1358 (8th Cir.), cert. denied, 513 U.S. 964 (1994). Missouri recognizes the Restatement (Second) of Conflict of Laws (1971), which states that the liability of a party in tort is "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second)

of Conflict of Laws § 145 (1); Dorman, 23 F.3d at 1358. On appeal, Mr. Alumbaugh argues that Missouri law, rather than Kansas law, which includes the principle of comparative fault, should apply, because, on the facts of this case, Missouri has a greater governmental interest in the outcome. See Gilmore v. Attebery, 899 S.W.2d 164, 167 (Mo. App. 1995).

The "most significant relationship" test requires a court to evaluate certain contacts when deciding choice-of-law matters in personal-injury cases. Among those factors are: (1) the place where the injury occurred (here Kansas); (2) the place where the conduct causing the injury occurred (Kansas); (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties (Mr. Alumbaugh's domicile is Missouri, Union Pacific is a Delaware corporation with its principal place of business in Omaha, Nebraska, and Goodyear is an Ohio corporation with its principal place of business in Ohio; both Union Pacific and Goodyear conduct business in Kansas and Missouri); and (4) the place where the relationship, if any, between the parties is centered (Kansas). Restatement § 145(2). Mr. Alumbaugh contends that Missouri's comparative-fault rules reflect that state's policy of compensating Missouri residents as it sees fit, and that it has the greater governmental interest in the outcome of these suits. It might be said, with equal validity, that Kansas has the greater governmental interest, because it has the prerogative of regulating conduct within its borders. In our view, Kansas has the most significant contacts with this case, and the District Court correctly held that Kansas law governs.

On the merits, Mr. Alumbaugh asserts that Goodyear violated its duty to warn of a danger, and that its advertising of rubber rail-crossing equipment included an express warranty with respect to the durability and quality of the equipment. Under the Kansas Product Liability Act, certain causes of action in tort have been consolidated into a single theory of liability. A "Product liability claim" includes any claim or action brought for harm arising out of the use of a product, including "any

action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to discharge, a duty to warn or instruct, whether negligent or innocent, . . ." Kan. Stat. Ann. § 60-3302(c) (2001). One section of this Act sets out a "Manufacturer's or seller's duty to warn or protect against danger." Kan. Stat. Ann. § 60-3305. There is no duty to warn for manufacturers where "a reasonable user or consumer of the product, with the training, experience, education, and any special knowledge the user or consumer did, should or was required to possess," would be expected to know what appropriate "safeguards, precautions and actions" were to be taken. Id. Because Union Pacific was such "a reasonable user or consumer" and "was required" to possess knowledge of the proper maintenance of the rubber rail-crossing equipment, the District Court held that Goodyear had no duty to warn Union Pacific. We agree with this analysis.

Mr. Alumbaugh also argues that Goodyear breached an express warranty, because its advertising and published representations about the "longevity or durability" of its equipment formed the basis of the bargain with Union Pacific for the equipment. An express warranty is created when statements made to a buyer during negotiations become part of the basis of the bargain. Corral v. Rollins Protective Servs. Co., 240 Kan. 678, 685, 732 P.2d 1260, 1266 (1987); Kan. Stat. Ann. § 84-2-313 (2001). Mr. Alumbaugh presented no evidence that statements made in promotional literature before the date of sale in mid-September 1985 formed the basis of the bargain between Union Pacific and Goodyear. In fact, Union Pacific relied on the recommendation of the City of Kansas City, Kansas, which requested that Union Pacific use this product. Nor was Mr. Alumbaugh able to establish that conversations between Mr. Johnson of Goodyear and a Union Pacific employee influenced Union Pacific's decision to purchase Goodyear's rubber railroad-crossing equipment. There was, therefore, no evidence that Union Pacific's decision to purchase this particular equipment was based on particular statements as to the durability or longevity of the equipment, and so there was no evidence of an express warranty.

As to Union Pacific, Mr. Alumbaugh argues that genuine issues of material fact exist as to liability both for ordinary negligence and negligence <u>per se</u>. He alleges that Union Pacific is liable for negligence <u>per se</u> under Kan. Stat. Ann.§ 66-227 (Supp. 2001), which addresses the duties and liabilities of railroad companies as to crossings, approaches, and gates. For a negligence <u>per se</u> claim to succeed, it must be shown that the legislature intended to create a private right of action in favor of the class of persons to which the plaintiff belongs for violation of the statute. Union Pacific points out that the Kansas statute does not specify that it creates an individual right of action, whereas in other provisions of Title 66 an individual right of action is made explicit. For these reasons, as explained in the opinion of the District Court, we agree that that Court properly granted summary judgment to Union Pacific on this claim.

The plaintiff's claim for simple or ordinary negligence, however, remains to be discussed. Under Kansas law, an occupier of land owes a duty of reasonable care under all circumstances. <u>Jones v. Hansen</u>, 254 Kan. 499, 509, 867 P.2d 303 (1994). Railroads "must exercise due care for the safety of travelers at public crossings." <u>Waits v. St. Louis-San Francisco Ry.</u>, 216 Kan. 160, 168, 531 P.2d 22, 29 (1975). Where, as here, an injury has resulted from a dangerous condition, the plaintiff must show that the landowner or occupier had actual knowledge of the condition, or that the condition had existed for so long that, in the exercise of ordinary care, the owner or occupier should have known about it. <u>Kimes v. Unified School District No. 480, Seward County</u>, 934 F. Supp. 1275, 1279 (D. Kan. 1996).

The District Court held that there was no evidence that Union Pacific actually knew about the dangerous condition on the crossing, and, to this extent, we agree. The Court also held, however, that there was no substantial evidence that Union Pacific, in the exercise of ordinary care, should have known about the condition. On this point, we respectfully disagree with the trial court. The plaintiff offered the testimony of Raymond A. Duffany, an expert in repair of grade crossings of this

-5-

particular type, to the effect that, before the accident, the crossing had been in a state of disrepair for a substantial period of time, so that Union Pacific should have known of the condition and taken remedial action. In the view of the District Court, this testimony was not admissible because it would have "invade[d] the province of the jury." Dist. Ct. Op. 14. We disagree. The admission or exclusion of expert testimony is within the discretion of the trial judge, but such decisions must be reversed if they are found to be "manifestly erroneous." United States v. Kelly, 679 F.2d 135, 138 (8th Cir. 1982). "[A]n expert, as distinguished from a lay witness, may express his opinion on the ultimate jury question." United States v. Duane Two Eagle, 318 F.3d 785, 792 (8th Cir. 2003) (citing Hanger v. United States, 398 F.2d 91, 106 (8th Cir. 1968); Feguer v. United States, 302 F.2d 214, 242 (8th Cir. 1962)). Accord, Fed. R. Evid. 704(a) (" . . . testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). In Mr. Duffany's opinion, "this crossing was not in a state of good repair . . . because its components . . . were not maintained properly and were badly deteriorated." Duffany Affidavit 16, I App. 99. We believe the jury was entitled to hear this testimony, and that the jury could have reasonably inferred, from the state of deterioration, that the condition had been present long enough to be noticed by a reasonable landowner.

This conclusion finds further support in the testimony of two employees of the defendant Union Pacific itself, offered by plaintiff in the District Court. Frank Garcia, an inspector employed by the railroad, was aware of cracks or fractures in the crossing before the accident, and stated that it had taken years for these conditions to develop. II App. 186. George Romaker, another employee of defendant, testified that he did not recall the performance of any maintenance work at the crossing. I Appellees' Supp. App. 121. In addition, Mike Daniels, a union steward, observed the crossing and made the following statement:

> I got common sense and common sense tells me that [the rubber crossing equipment] was broke for more than an hour, a week, a day. [The crossing equipment] had been broke for some time.

I Appellees' Supp. App. 103.

Certainly, this testimony leaves room for argument. The jury might find that it was not sufficiently specific, or, indeed, that it was not credible at all. It is certainly possible — and Union Pacific has done this — to parse the wording of the various statements and emphasize their lack of certainty. On summary judgment, however, an issue must go to the jury if the evidence, viewed in the light most favorable to the party opposing the motion, could rationally justify a finding in that party's favor. We believe that is the case here.

Finally, although the statute, Kan. Stat. Ann. § 66-227, does not itself create a right of action, and cannot be the basis for a negligence per se theory, it is still relevant to the case. Here is what the statute says:

> It is hereby made the duty of every person or corporation owning or operating any railroad crossed by a public highway . . . to make, and keep in good repair, good and sufficient crossings for such highway . . . over their tracks, including all the grading, bridges, ditches and culverts . . . that may be necessary to make a safe crossing.

In determining whether Union Pacific ought to have known of the dangerous condition, the duty imposed by this statute upon it is surely relevant. At trial, the jury should be informed of the statute, and allowed to take it into account in determining the liability vel non of Union Pacific for simple or ordinary negligence.

## III.

For the reasons given, we agree with the District Court's decision to grant summary judgment in favor of Goodyear Tire & Rubber Company. We also agree that there is no right of action for negligence per se under Kan. Stat. Ann. § 66-227. As to the plaintiff's ordinary-negligence theory, however, the grant of summary judgment for defendant Union Pacific is reversed, and the cause remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.