# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1355

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Elias Zavala, also known as | * | District of Nebraska. |
| Shannon Estrada, also known as | * | |
| Francisco Alvarez-Estrada, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 13, 2005
Filed: October 31, 2005

_____

Before RILEY, FAGG, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Elias Zavala ("Zavala") was convicted of one count of conspiracy to distribute 50 grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 846 and two counts of possession with intent to distribute 50 grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 841. The district court imposed concurrent sentences of 360 months' imprisonment for the conspiracy count and 240 months' imprisonment for each possession with intent to distribute count. On appeal, Zavala argues that the district court erred in denying his

motion to suppress evidence and that he should be resentenced in light of *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons discussed below, we affirm Zavala's conviction but vacate his sentence and remand to the district court for resentencing.

## I. BACKGROUND

On May 15, 2001, Omaha police officers executed a search warrant at the residence of Pamela Maldonado. During the search, Maldonado identified a bedroom as the one she shared with her boyfriend. From that bedroom, officers seized over 100 grams of methamphetamine, $980 in cash, a functional scale and a Kansas identification card ("ID card") in the name of "Shannon Estrada." Maldonado admitted to the officers that Zavala was the man pictured on the ID card and that she and Zavala had been selling methamphetamine. One officer, Sergeant Mark Langan ("Sgt. Langan"), kept the ID card in his briefcase that summer but did not actively search for Zavala.

On September 21, 2001, Omaha police officers, including Sgt. Langan, executed an unrelated search warrant at the residence of Pepsi Million. The officers were unaware of any connection between Zavala and Million at the time of the search. During the search, Zavala arrived at Million's residence. He identified himself to two uniformed officers outside the residence as "Francisco Alvarez." The officers advised Sgt. Langan by radio of Zavala's arrival. When Sgt. Langan went outside, he immediately recognized Zavala as the person pictured on the ID card he still had in his briefcase. As a result, Sgt. Langan realized that Zavala had given the officers a false name. Officers arrested Zavala and searched him, finding 0.25 ounces of methamphetamine and six nine-millimeter bullets in his pants pocket.

Zavala was indicted for one count of conspiracy to distribute methamphetamine and two counts of possession with intent to distribute methamphetamine. Before trial,

he filed a motion to suppress the bullets and methamphetamine seized from his person and to suppress statements he made during the incident.

At the suppression hearing before a magistrate judge, Zavala and Sgt. Langan offered conflicting testimony. Zavala testified that, as soon as he entered Million's yard, the two uniformed officers drew their pistols, pointed them at him, and patted him down. He further testified that the officers never told him he was under arrest and searched him without asking for consent. He also testified that he does not speak English fluently and that he told the officers he was under the influence of alcohol. In contrast, Sgt. Langan testifed that the two uniformed officers did not draw their weapons or pat down Zavala and that, although Zavala appeared to have been drinking alcohol, he responded to the officers appropriately and coherently in English throughout the incident and, specifically, when he consented to be searched.

Following this hearing, the magistrate judge issued a report and recommendation to deny the motion to suppress. The magistrate judge found that the police officers had probable cause to arrest Zavala based on the search of Maldonado's residence or on Zavala's false identification of himself to the officers. The magistrate judge also found Sgt. Langan's testimony more credible than Zavala's testimony and found that Zavala consented to the search or, alternatively, that the search was proper as incident to a lawful arrest. Zavala did not object to the report and recommendation, and the district court adopted it in its entirety and denied Zavala's motion.

A jury subsequently convicted Zavala on all three counts. The presentence investigation report recommended numerous sentencing enhancements. Zavala filed written objections to each enhancement and to the calculated drug quantity. The district court overruled each objection. At his sentencing hearing, the district court imposed concurrent sentences of 360 months' imprisonment for the conspiracy count and 240 months' imprisonment for each count of possession with intent to distribute.

## II.   DISCUSSION

### A.  Motion to Suppress

Zavala argues that the district court erred in denying his pretrial motion to suppress the bullets and methamphetamine seized from him.[1]  In particular, Zavala disputes the district court's holdings that the police officers had probable cause to arrest him and that he voluntarily consented to be searched.  Because Zavala failed to object to the magistrate judge's report and recommendation, we review the district court's factual findings for plain error.  *See* Fed. R. Crim. P. 52(b); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998).  We review de novo the legal conclusions based on those facts.  *Looking*, 156 F.3d at 809.

We find no error, plain or otherwise, in the district court's factual findings. Furthermore, we agree with the district court that the officers had probable cause to arrest Zavala and that Zavala voluntarily consented to be searched.

First, we agree with the district court that the officers had probable cause to arrest Zavala based on information they learned during the search of Maldonado's residence.  "Probable cause to conduct a warrantless arrest exists when at the moment

---

[1] On appeal, Zavala has abandoned the argument that his statements should have been suppressed.  Although he mentions this issue in his brief, Zavala fails to provide any reasons or arguments for suppressing his statements.  *See* Fed. R. App. P. 28(a)(9)(A) (requiring appellants' briefs to contain arguments "with citations to the authorities and parts of the record on which the appellant relies."); *cf. United States v. Paz*, 411 F.3d 906, 911 n.4 (8th Cir. 2005) (holding that defendant abandoned an argument on appeal by making only fleeting references to it in the context of a different issue in his brief).

of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." *United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The evidence of methamphetamine distribution seized during the search of Maldonado's residence, coupled with her incriminating statements against Zavala, established probable cause to arrest Zavala. *Cf. United States v. Marchena-Borjas*, 209 F.3d 698, 700 (8th Cir. 2000) (per curiam) (finding probable cause for a methamphetamine-related arrest based on descriptive information from a confidential informant and corroborating evidence from a police investigation).[2]

Second, we agree with the district court that the officers properly searched Zavala based on his voluntary consent. It was not error for the magistrate judge to resolve credibility issues in favor of Sgt. Langan. *See United States v. Ziesman*, 409 F.3d 941, 955 (8th Cir. 2005) ("Witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal."). Accordingly, it was not error for the district court to find that the officers did not draw their guns on Zavala, that the officers asked Zavala for consent to be searched, and that Zavala's English-language skills were sufficient to allow him to consent in English. Furthermore, it was not error to find that, although Zavala appeared to have been drinking alcohol, his appropriate and coherent responses to the officers' questions demonstrated he was not intoxicated. Given these facts, we hold that Zavala voluntarily consented to be searched.[3] Therefore, the district court properly denied Zavala's motion to suppress.

---

[2] We also agree with the district court that Sgt. Langan's familiarity with Zavala's ID card created probable cause to arrest Zavala for providing a false name to police officers in violation of Nebraska law. *See* Neb. Rev. Stat. § 28-907 (prohibiting false reporting to police officers).

[3] We also agree with the district court that the search of Zavala was proper as incident to a lawful arrest. *See United States v. Smith*, 422 F.3d 715, 726 (8th Cir. 2005) (citing *United States v. Edwards*, 415 U.S. 800, 802-03 (1974), for the

**B. Sentencing**

Zavala argues that he should be resentenced in light of *Booker*, 125 S. Ct. at 756. We agree.

Zavala was sentenced in violation of *Booker* and the Sixth Amendment because he was sentenced under the then-mandatory United States Sentencing Guidelines and his guidelines sentence was enhanced based on judge-found facts that were not tried to a jury or admitted by Zavala. *See United States v. Mendoza-Mesa*, 421 F.3d 671, 672 (8th Cir. 2005). Zavala filed timely objections to these enhancements and sufficiently raised *Apprendi* before the district court. Therefore, we review his sentence for harmless error. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc), *cert. denied*, No. 05-5547 (U.S. Oct. 3, 2005). Because this error is of constitutional magnitude, the Government bears the burden of proving harmless error beyond a reasonable doubt. *Mendoza-Mesa*, 421 F.3d at 672 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

The Government did not meet its burden of proving harmless error in this case. The Government suggests that the *Booker* error was harmless because the district court denied Zavala's motion to depart downward. However, merely declining to grant a downward departure motion "does not speak to whether the district court would have imposed the same sentence under an advisory guidelines system or would have otherwise varied from the applicable Guidelines range based on factors set forth in 18 U.S.C. § 3553(a)." *See Mendoza-Mesa*, 421 F.3d at 673. Zavala was sentenced at the bottom of the applicable guidelines range, and the district court made no suggestion that it would have imposed the same sentence under an advisory guidelines regime. *See, e.g.*, *United States v. Storer*, 413 F.3d 918, 923 (8th Cir. 2005) (holding

---

proposition that a search incidental to an arrest is an exception to the Fourth Amendment warrant requirement).

*Booker* error was not harmless because the Government failed to point to anything in the record that showed the district court would have imposed the same sentence under an advisory system); *United States v. Haidley*, 400 F.3d 642, 644-45 (8th Cir. 2005) (holding *Booker* error was not harmless because the district court sentenced defendant at the bottom of the guidelines range). Therefore, we cannot say the error was harmless.

Accordingly, we vacate Zavala's sentence and remand to the district court for resentencing. However, nothing in this opinion should be construed as an indication that we think a more lenient sentence is necessary. Based on the record before us, we simply decline to speculate that the district court would have imposed the same sentence under an advisory guidelines scheme considering the full range of § 3553(a) factors. *See United States v. Turnbough*, No. 04-3242 (8th Cir. Oct. 11, 2005).

## III.    CONCLUSION

For the reasons set forth above, we affirm Zavala's conviction, but we vacate his sentence and remand to the district court for resentencing under an advisory guidelines regime.

_____