# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1855

_____

| | | |
|---|---|---|
| Kenneth S. Rotskoff; Judith A Rotskoff, | * * * | |
| Plaintiffs - Appellees, | * * * | |
| Elise Bernier; Emanuel Escher; Neil Berson; Michelle Berson, | * * * | |
| Plaintiffs, | * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Peter Crump; Stan Dveris; Donald Gordon, | * * * | |
| Plaintiffs - Appellees, | * * | |
| Gerald Grewe; Barry Goldenberg; Susan Goldenberg, | * * * | |
| Plaintiffs, | * * | |
| James Hirshfield, | * * | |
| Plaintiff - Appellee, | * * | |
| Thomas Matthes; Edwardo Phillips, | * * | |
| Plaintiffs, | * * | |
| James Robbins; Linda Rotskoff; | * | |

Morris Rotskoff; Sylvia Rotskoff,    *
    *
        Plaintiffs - Appellees,    *
    *
Gary S. Traub; Phyllis Traub,    *
    *
        Plaintiffs,    *
    *
Michael Pruett,    *
    *
        Plaintiff - Appellee,    *
    *
Albert Finkelstein,    *
    *
        Plaintiff,    *
    *
    v.    *
    *
Wester S. Cooley,    *
    *
        Defendant,    *
    *
George Tannous,    *
    *
        Defendant - Appellant,    *
    *
Bidbay.Com, also known as    *
Auctioneer.com, Inc., Inc.;    *
Bidbayeurope.com, Inc.; George    *
Tannous & Affilliates, Inc.;    *
Askgt.com, Inc.; DeElroy Beeler, Jr.,    *
    *
        Defendants.    *

_____

Submitted: January 12, 2006
Filed: February 17, 2006

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

George Tannous appeals the jury verdict against him on the claims of conspiracy to defraud and violations of the Securities Act. He argues the evidence was insufficient to support the verdict, the district court[1] erred in instructing the jury, and the district court erred in denying his motion for directed verdict. We affirm.

I

Between 1990 and 1993, Tannous, a California resident, was an agent for the Internal Revenue Service. He then started his own business representing taxpayers. By 1999, Tannous's work load vastly diminished, so he bought the intellectual property to "Bidbay.com," a company he hoped would compete with eBay.com. He also created the search engine "AskGt" to be used with Bidbay.com. He enlisted the help of clients Wester Cooley, a former Oregon Congressmen, and Don Dayer, a felon convicted of tax fraud, to raise needed capital. Dayer, in turn, recruited John Montgomery, also a felon whose real name was DeElroy Beeler. Cooley, Dayer, and Montgomery are all California residents.

By 2000, Tannous was orchestrating an initial public offering (IPO) for Bidbay.com. Kenneth Rotskoff, a St. Louis oral surgeon, learned of the investment opportunity from a patient who referred Rotskoff to Montgomery. Montgomery told Rotskoff Bidbay.com stock would be offered in the IPO at $20 per share, but

_____

[1]The Honorable Henry E. Autry, United States District Judge for the Eastern District of Missouri.

-3-

Rotskoff could buy stock early by paying $2 per share. Rotskoff asked for, but never received, either an offering circular or a prospectus. Montgomery sent Rotskoff two documents appearing to be a registration statement filed with the Securities and Exchange Commission (SEC) and an SEC order declaring the registration to be "effective." Relying on this information, Rotskoff and his wife invested. In exchange, Rotskoff received stock certificates in the companies BidbayEurope.com and George Tannous & Affilliates. When asked why he did not receive Bidbay.com stock, Montgomery explained he could exchange these shares for Bidbay.com shares after the completion of the IPO.

In February 2002, Montgomery called Rotskoff from California and told him eBay.com was interested in purchasing Bidbay.com and AskGT.com. He also represented eBay would pay upwards of $20 per share for Bidbay.com and AskGT.com stock. Rotskoff, acting on this information, invested in AskGT.com. At the time, Montgomery represented the IPO was about to be launched, yet in reality, Bidbay.com's IPO registration statement had already been withdrawn from further regulatory review and approval by the SEC.

Shortly thereafter, Rotskoff became concerned and asked for his money back. To ease Rotskoff's concerns, Montgomery and Tannous called Rotskoff, and Tannous mentioned eBay.com was interested in buying Bidbay.com. Montgomery interrupted, stating Tannous could not talk about the subject, and the conversation came to a halt shortly thereafter. Montgomery immediately called Rotskoff to assure him the eBay.com acquisition would take place, but he stated Tannous, as an officer of the company, could not speak on the issue. Rotskoff also called Cooley, who also assured him the sale would take place. Ebay.com never did buy Bidbay.com; however, Rotskoff convinced others to invest in Bidbay.com on the basis of this information. These investors were residents of Missouri, Texas, Pennsylvania, Michigan, Wyoming, and Canada.

Rotskoff and other investors sued Cooley, Tannous, Montgomery, and the corporate entities involved. After the close of the plaintiffs' evidence, the district court denied Tannous's motion for a directed verdict, which was not renewed at the close of all evidence. The jury returned a verdict against Tannous, finding him personally liable for approximately $987,000.00 in compensatory damages and $11.00 in punitive damages. Only Tannous appeals.

II

A

As an initial matter, Tannous waived his argument regarding sufficiency of the evidence because the issue was not developed in his briefs as required by Federal Rule of Appellate Procedure 28(a)(9)(A). It is thus considered abandoned for failure "to provide any reasons or arguments" for his contentions. United States v. Zavala, 427 F.3d 562, 564 n.1 (8th Cir. 2005).

Additionally, this argument is without merit because if "a party does not move for judgment as a matter of law at the close of all the evidence, [he] normally cannot later argue that there was insufficient evidence to support the verdict." BE & K Constr. Co. v. United Bros. of Carpenters & Joiners of Am., AFL-CIO, 90 F.3d 1318, 1325 (8th Cir. 1996). There are two exceptions to this rule: (1) if the Rule 50 motion is made close to the end of the presentation of all evidence and the district court indicates the party need not renew the motion at the appropriate subsequent time, or (2) if the failure to allow such a claim would "constitute plain error resulting in a manifest miscarriage of justice." Id. (citations omitted). Because neither of these exceptions is applicable, sufficient evidence exists supporting the verdict.

B

With respect to the jury instructions, Tannous claims the district court erred in instructing the jury on the burden of proof required for each count. Because he failed to object to the instructions at trial, we review for plain error. Lighting & Power Servs., Inc. v. Roberts, 354 F.3d 817, 820 (8th Cir. 2004). We have previously recognized plain error review in the civil context is a "stringently limited standard of review." Wilson v. Brinker Intern., Inc., 382 F.3d 765, 771 (8th Cir. 2004) (citation omitted). To establish plain error, Tannous must show an error which is plain "likely altered the outcome[] and . . . was sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial proceeding." Id. (quoting Gray v. Genlyte Group, Inc., 289 F.3d 128, 134 (1st Cir. 2002)).

The instructions required the jury to apply the "preponderance of the evidence" standard on both the civil conspiracy claim and the availability of punitive damages. Tannous claims the court should have instructed the jury to make these determinations based on clear and convincing evidence as required by Missouri law. See Krysa v. Payne, 176 S.W.3d 150, 158 n.3 (Mo. Ct. App. 2005) (punitive damages); Mika v. Central Bank of Kan. City, 112 S.W.3d 82, 93 (Mo. App. Ct. 2003) (civil conspiracy). The plaintiffs allege California law applies, and under California law, punitive damages must be awarded on the "clear and convincing" standard, but civil conspiracy may be found based on a preponderance of the evidence. Johnson v. Ford Motor Co., 113 P.3d 82, 88 (Cal. 2005) (punitive damages); Sprague v. Equifax, Inc., 166 Cal. App. 3d 1012, 1055 (Cal. Ct. App. 1985) (civil conspiracy).

With respect to the instructions regarding punitive damages, the district court did clearly err; however, no miscarriage of justice would result if this $11.00 error were left uncorrected. See Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir. 1998) (requiring a finding of a miscarriage of justice under plain error review). With

-6-

respect to the instructions regarding civil conspiracy, the parties did not specify which law should apply, and the district court apparently relied on the California law. Under Missouri law, the law of the state with the "most significant relationship" as defined by the Restatement (Second) of Conflicts of Laws should be applied. <u>See Alumbaugh v. Union Pacific R.R. Co.</u>, 322 F.3d 520, 523 (8th Cir. 2003).[2] These factors do not clearly point in favor of either California or Missouri law. Although the defendants are California residents and made their misrepresentations over the telephone while in California, the plaintiffs are Missouri residents who decided to invest while living in Missouri. Because the choice-of-law question is close, the district court did not clearly err in instructing the jury on California law.

C

Finally, Tannous claims the district court erred by not granting a directed verdict in his favor on his in pari delicto defense. Because Tannous did not renew his motion for a directed verdict at the close of all evidence and because the two exceptions noted above are inapplicable, he cannot show the district court erred.

Accordingly, we affirm.

_____

[2]The following factors should be examined to determine which state has the most significant relationship to the tort action and the parties involved:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of the business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts of Laws § 145(2).