# United States Court of Appeals
## For the Eighth Circuit

———————————————

Nos. 23-1193/23-1289

———————————————

Jacam Chemical Company 2013, LLC

*Appellant/Cross-Appellee*

v.

Arthur H. Shepard Jr.

*Appellee*

GeoChemicals, LLC

*Appellee/Cross-Appellant*

——————————

Appeal from United States District Court
for the District of North Dakota

——————————

Submitted: February 15, 2024
Filed: May 17, 2024

——————————

Before BENTON, GRASZ, and STRAS, Circuit Judges.

——————————

GRASZ, Circuit Judge.

These appeals come from multiple lawsuits that Jacam Chemical Company 2013, LLC (Jacam) filed against its competitor GeoChemicals, LLC and

GeoChemicals's employees. This particular lawsuit centers on Arthur Shepard Jr., a former Jacam employee who went to work for GeoChemicals. Jacam sued both Shepard and GeoChemicals. GeoChemicals and Shepard both countersued Jacam. The parties filed competing motions for summary judgment. After granting a declaratory judgment to Shepard, concluding that he owed no contractual obligations to Jacam, the district court[1] dismissed Jacam's and GeoChemicals's remaining claims. Both Jacam and GeoChemicals appeal aspects of the district court's decision. We affirm the district court.

## I. Background

In 2008, Shepard began working for Jacam's predecessor company, Jacam Chemical Co. (Old Jacam). Old Jacam was headquartered in Kansas, while Shepard worked from an office in North Dakota. Old Jacam had a sister company managing its payroll, HCS, LLC, which directed Shepard to sign an employee agreement (the HCS Agreement). HCS and Old Jacam wanted Shepard to accept various restrictive covenants, including a non-solicitation agreement, a non-disclosure agreement, and a non-compete agreement. In consideration for signing, the HCS Agreement offered Shepard "the opportunity to participate in an Equity Plan in [Old Jacam] upon signing this Agreement." Shepard signed the HCS Agreement.

In 2013, Old Jacam's owner, Gene Zaid, sold Old Jacam to CES Energy Solutions Corp., a Canadian corporation. Via an Asset Purchase Agreement, CES bought all Old Jacam's assets for $240 million. CES created Jacam as the legal entity that inherited all Old Jacam assets. The agreement called for Old Jacam to fire all employees (including Shepard) before the agreement's closing date, March 1, 2013, and then to rehire those employees effective as of the closing date. Thus, Old Jacam terminated Shepard at "midnight on February 28, 2013." Shepard accepted Jacam's emailed offer to rehire him starting March 1, 2013, offering him

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

employment "in all the same ways (position/role, title, compensation, benefits, and all other employment terms) that [he] enjoyed as a JACAM employee[.]" Jacam also claims to have paid Shepard a $90,000 retention payment to keep him as an employee of Jacam.

While working for Jacam, Shepard signed various versions of CES's Code of Business Conduct handbooks (Conduct Code). The Conduct Code outlined CES's "expectations and guidelines in the conduct of its business" and the various duties owed by CES employees. For example, the 2015 Conduct Code required employees to "maintain the confidentially of information entrusted to them" and this duty purportedly continued "even beyond termination of employment[.]"

For Shepard, "termination of employment" came in April 2019, when Jacam managers asked him to a coffee shop with promises to "talk about bonuses," and then, upon his arrival, fired him. After his termination, Shepard pivoted to work for GeoChemicals—another chemical company Gene Zaid founded. So began the events leading up to this lawsuit.

Shepard went to work expanding GeoChemicals's business in North Dakota, drawing on his experience in North Dakota's oil and gas industries. He convinced his former Jacam coworkers to send him Jacam's customer proposals and pricing information. GeoChemicals then used that information to underbid Jacam and obtain its customers. Shepard also solicited three Jacam employees to leave their jobs and come work for GeoChemicals. Meanwhile, Jacam told one GeoChemicals customer that Jacam had a non-compete agreement with Shepard, which he and GeoChemicals were violating. Shortly thereafter, that customer cut ties with GeoChemicals "due to legal matters."

Jacam sued Shepard and GeoChemicals. Jacam alleged Shepard breached the restrictive covenants found in the HCS Agreement and the 2015 Conduct Code, and that he also misappropriated its customer proposals and pricing information. Jacam also alleged both Shepard and GeoChemicals tortiously interfered with contracts

-3-

Jacam had with its employees and customers. Shepard counterclaimed against Jacam for, among other relief, a declaratory judgment that he had no enforceable agreement with the company. GeoChemicals also counterclaimed against Jacam for tortiously interfering with its business relationships. On the parties' competing motions for summary judgment on all claims, the district court granted judgment to Shepard, holding he had no enforceable agreements with Jacam. In the same order, the district court dismissed all Jacam's and GeoChemicals's other claims against each other. Both Jacam and GeoChemicals appeal aspects of the summary judgment order.

## II. Analysis

"North Dakota law determines the rights of the parties in this diversity action, and we review de novo both the District Court's interpretation of North Dakota law . . . as well as its grant of summary judgment[.]" *Kovarik v. Am. Fam. Ins. Grp.*, 108 F.3d 962, 964 (8th Cir. 1997).[2] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant 'bears the initial responsibility of informing the district court of the basis for its

---

[2]In a footnote, Jacam argues the district court committed choice-of-law error by applying North Dakota law and not Kansas law because the HCS Agreement contains a Kansas choice-of-law provision. We decline to address this argument because Jacam did not properly present it. Indeed, Jacam failed to include the issue in its Statement of Issues, only raised the issue in a footnote, and then did not address the issue in its reply brief or oral argument. *See Falco Lime, Inc. v. Tide Towing Co.*, 29 F.3d 362, 367 n.7 (8th Cir. 1994). *Accord Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 848 n.2 (8th Cir. 2002) ("[T]his Court will not consider a claim improperly presented in a footnote."). Jacam does not develop its argument on how the district court's error affected the case, only alleging the district court erred "to the extent that a true conflict existed between North Dakota and Kansas law." Neither does Jacam explain what "true conflict" exists between the two states' laws, and so we may consider this argument abandoned. *See Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006) (noting the court may consider an argument abandoned if a party fails to provide arguments for its contentions); Fed. R. App. P. 28(a)(8)(A).

motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

"In resolving the substantive issues of state law presented in this appeal, we are bound in our interpretations of North Dakota law by the decisions of the North Dakota Supreme Court," predicting what the North Dakota Supreme Court would decide if it has not directly spoken on an issue. *Kovarik*, 108 F.3d at 964. "In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Id.* (ellipses in original) (quoting *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995)). We begin with Jacam's appeal before moving to GeoChemicals's cross-appeal.

## A.  Jacam's Appeal

Jacam's appeal boils down to three issues:[3] whether the district court erred in granting summary judgment on Jacam's claims for (1) breach of contract, (2) misappropriation of trade secrets, or (3) tortious interference with a contract.

---

[3]Throughout its principal brief, Jacam raises several arguments it previously abandoned before the district court. For example, Jacam presented the issue of "[w]hether the district court erred in not addressing Jacam's claims that Appellees tortiously interfered with its business relations." But Jacam explicitly abandoned this claim in its amended complaint, with counsel conceding at oral argument the claim "should not have been included" in its brief as it is "not a claim that is at issue in this case." Unfortunately, briefing of abandoned issues wastes judicial resources, as well as those of the parties.

-5-

## i. Breach of Contract

Jacam asserts the district court erred in holding that neither the HCS Agreement nor the 2015 version of CES's Conduct Code created an enforceable contract between it and Shepard.[4] Under North Dakota law, an enforceable contract must have (1) "[p]arties capable of contracting," (2) "[t]he consent of the parties," (3) "[a] lawful object," and (4) "[s]ufficient cause or consideration." N.D. Cent. Code § 9-01-02. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful." *Id.* § 9-07-03.

## a. The HCS Agreement

Jacam seeks to hold Shepard liable for violating the HCS Agreement's restrictive covenants; specifically, its employee-non-solicitation and non-disclosure obligations. Jacam does not seek to enforce the HCS Agreement's non-competition obligation, as North Dakota law generally voids non-compete agreements of this kind. *See id.* § 9-08-06; *Warner & Co. v. Solberg*, 634 N.W.2d 65, 70 (N.D. 2001).

The district court held there were multiple reasons why the HCS Agreement was not an enforceable contract, including because the promised-for consideration

---

[4]Jacam argues Shepard created an enforceable contract with Jacam on March 1, 2013, when he accepted the emailed offer to continue his employment with Jacam under the same terms as his previous employment with Old Jacam. Jacam abandoned this argument before the district court, and "a party cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment." *Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 533 F.3d 932, 936 (8th Cir. 2008). At oral argument, Jacam effectively conceded this point by not asserting that the email offer constituted an enforceable contract. As such, we deem Jacam abandoned any claim that the emailed offer formed an independent, enforceable employment agreement, and so we do not address it.

failed. In the HCS Agreement's Article 3.1, (titled, "Consideration") Old Jacam promised Shepard that in exchange for his agreeing to the non-compete/non-solicitation and non-disclosure obligations, Old Jacam "shall offer [him] the opportunity to participate in an Equity Plan . . . ." Jacam does not contest this consideration failed—Shepard never participated in the promised Equity Plan, nor was he even offered the "opportunity" to participate in one. Instead, Jacam argues the failure-of-consideration defense fails because (1) Shepard did not specifically plead it as an affirmative defense, so he waived it; (2) the $90,000 retention bonus was consideration for the agreement; and (3) Shepard's continued employment was sufficient consideration for the restrictive covenants. None of these arguments are availing.

First, though Shepard did not explicitly plead a failure-of-consideration defense, we do not consider it waived. It is true that Shepard only pled "[t]he purported agreements or contracts *lack* consideration," not that the consideration *failed*. The two defenses are not synonymous. "*Failure of consideration* arises when a valid contract has been formed, but the performance bargained for has not been rendered," while *lack of consideration* "prevents an enforceable contract from ever being formed." *Check Control, Inc. v. Shepherd*, 462 N.W.2d 644, 646 (N.D. 1990) (emphasis added). North Dakota Rule of Civil Procedure 8(c) makes failure of consideration an affirmative defense that a party must plead, as does Federal Rule of Civil Procedure 8(c). This pleading requirement "'is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it,' but we decline to adhere to a construction of the Rule that would privilege 'form over substance.'" *Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 765–66 (8th Cir. 2022) (quoting *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007)). If an affirmative defense is "raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." *Id.* at 766 (quoting same).

Here, Shepard raised his failure-of-consideration defense in a way that did not result in unfair surprise to Jacam, and to which Jacam did not object. In pleading

"lack of consideration" as a defense, Shepard flagged his intention to argue a consideration issue as an affirmative defense. In summary judgment proceedings before the district court, Shepard argued that he was excused from performance because he "[n]ever received any equity in Jacam Chemical"—that is, he was excused from performance because the consideration failed. Jacam did not raise an objection to the district court of unfair surprise, but instead argued the consideration *did not fail*, suggesting Shepard *did* participate in the Equity Plan—a suggestion Jacam abandons on appeal. At the district court, the parties addressed Shepard's failure-of-consideration defense even if it went by another label. Thus, Jacam waived its failure-to-plead argument. Because Shepard did not participate in the Equity Plan, Jacam must show there is some other consideration supporting the HCS Agreement, or Shepard is otherwise excused from performing any of its obligations.

Jacam's second argument is that it paid Shepard $90,000 as consideration to renew the HCS Agreement once he began working at Jacam. Jacam does not cite to any facts in the record indicating what terms and conditions attached to this supposed $90,000 payment, so there is nothing to suggest the parties intended for the payment to renew the HCS Agreement. In fact, Jacam does not cite any facts showing this transaction ever even occurred. Instead, Jacam cites to its own briefing before the district court as establishing that fact. In its district court brief, Jacam cites generally to the entire 173-page Asset Purchase Agreement as supporting its claim it paid Shepard $90,000. Rather than citing to something in this voluminous record showing this payment ever occurred, Jacam invites the court to peruse hundreds of pages of a contract to find the facts Jacam needs to develop its own argument. We decline that invitation. A party may not make bare-bones assertions "hoping that we will do its work for it by developing the argument and putting flesh on its bones." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 324 (8th Cir. 2018). Jacam fails to point to any evidence suggesting this purported $90,000 payment is consideration supporting the HCS Agreement.

Finally, Jacam claims Shepard's continued employment was sufficient consideration to support its restrictive covenants. Indeed, North Dakota law allows

for "[c]ontinued employment for a substantial period of time [to be] sufficient consideration to support an employment agreement." *Larson Latham Huettl LLP v. Iversen*, 985 N.W.2d 662, 671 (N.D. 2023) (quoting *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004)). But that principle is inapposite to the present case when the HCS Agreement specifically averred that employment is at will and that "nothing contained in this Agreement is intended to be . . . a contract for, or guarantee of, initial and/or continued employment." Likewise, the HCS Agreement specifically stated its consideration was the promised "Equity Plan," in which Shepard never participated. The HCS Agreement's terms represented "the entire agreement between the parties with respect to their relationship," and they disavowed any "verbal understandings, contracts, representations or warranties between the parties which are not expressly set forth herein." We take the HCS Agreement at its word—the parties did not contemplate consideration for the HCS Agreement apart from the unrealized Equity Plan. Thus, Jacam fails to point to any facts rebutting Shepard's defense that the HCS Agreement's consideration failed.

### b. The 2015 Conduct Code

Jacam argues the 2015 version of CES's Conduct Code created an enforceable agreement between it and Shepard because the 2015 Conduct Code lacked the "Employment Is At-Will" and "Not A Contract Of Employment" disclaimers found in the 2013 and 2014 versions of CES's Conduct Codes. We disagree.

An employer may create a contract with an employee through a handbook or personnel policy manual if it was "intended to create a legal obligation between the parties, rather than serve as a guide." *Good Bird v. Twin Buttes Sch. Dist.*, 733 N.W.2d 601, 606 (N.D. 2007). A clear, conspicuous, and unambiguous disclaimer in an employee handbook preserves the presumption of at-will employment, but its absence is not controlling. *Hunt v. Banner Health Sys.*, 720 N.W.2d 49, 53 (N.D. 2006). Even without such a disclaimer, a court may still hold an employee handbook is not a contract if, after examining the whole document, the court determines the parties did not intend for the handbook to be an enforceable contract. *See id.* at 52.

We determine the parties did not intend to make the 2015 Conduct Code a binding contract even though it lacks an "at-will" disclaimer. Like the handbook at issue in *Good Bird*, the 2015 Conduct Code introduces itself as CES's "expectations and guidelines in the conduct of its business," which tends to show it merely set out guidelines. *See Good Bird*, 733 N.W.2d at 606 ("[T]he Handbook states that its 'primary purpose . . . is to serve as a resource guide . . . .'" (first ellipsis in original)). No other provision suggests the 2015 Conduct Code was intended to be a contract. It made no offer of consideration—not even for continued at-will employment—and it lacked any signature line or proviso that would bind Jacam or CES to any purported agreement. Jacam fails to show how the 2015 Conduct Code was anything other than company guidelines.

Ultimately, because neither the HCS Agreement nor the 2015 Conduct Code are enforceable against Shepard, the district court appropriately entered summary judgment on Jacam's breach-of-contract claims.

### ii. Misappropriation of Trade Secrets

We next consider Jacam's argument that the district court erred in granting summary judgment to Shepard on Jacam's claim that Shepard misappropriated trade secrets. On appeal, Jacam specifically claims Shepard misappropriated Jacam's pricing and customer proposals for three of its customers. "Though the existence of a trade secret is a fact-intensive inquiry, it is ultimately a question of law determined by the court." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 971 (8th Cir. 2011).

The district court decided Jacam's pricing information could qualify as protected trade secrets under North Dakota's version of the Uniform Trade Secrets Act, N.D. Cent. Code § 47-25.1-01(4), but only if Jacam made reasonable efforts to keep that information secret. Neither party contests that determination on appeal. Based on the facts in the record, the district court ultimately held Jacam did not take reasonable efforts to keep its information confidential, so its information is not

protectable as trade secrets. Jacam claims this holding was error, claiming it did take reasonable steps to protect its information.

For information to qualify as a protectable "trade secret," it must have been "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* § 47-25.1-01(4)(b). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *AvidAir*, 663 F.3d at 974. "The use of proprietary legends on documents or the existence of confidentiality agreements are frequently-considered factors in establishing or denying a trade secret claim." *Id.* "Misplaced trust in a third party who breaches a duty of confidentiality does not necessarily negate efforts to maintain secrecy," *id.*, because secrecy is not lost "if the holder of the trade secret reveals the trade secret to another in confidence, and under an implied obligation not to use or disclose it[,]" *id.* (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) (internal quotation marks omitted)).

Before the district court, Jacam contended Shepard, after he had been terminated, obtained pricing information from his former coworkers pertaining to three of Jacam's customers—Slawson Exploration Company, Inc., Scout Energy Management LLC, and Sinclair Oil Corporation. Shepard passed the information along to GeoChemicals, who used it to underbid Jacam, thus winning the business of Scout Energy and Sinclair Oil. Slawson Exploration would have gone with GeoChemicals's lower bid had it not shared the lower bid with Jacam. To keep Slawson Exploration's business, Jacam lowered its prices and performed the work at a loss.

The district court concluded "as a matter of law that [Jacam] failed to undertake reasonable efforts to keep its pricing information confidential." The district court noted the particular customer-pricing information was not branded as "confidential," nor did Jacam produce any master service agreement or confidentiality agreement between its customers showing that Jacam required them to keep pricing information confidential. As to Sinclair Oil, Jacam did not even

produce a master service agreement. As for Scout Energy, its master service agreement did not contain any clause pertaining to secrecy or confidentiality of information. Finally, as to Slawson Exploration, the court recognized the master service agreement contained a blanket "Confidential Information" requirement, but that the agreement's language was "vague and generic and [made] no reference to pricing information or proposals"; the master service agreement was entered into between Old Jacam and Slawson Exploration in 2011 and made no reference to Slawson Exploration's obligations as to Jacam; and Jacam broke whatever confidentiality may have existed when it voluntarily gave the Slawson Exploration information away to third-party Burning Feathers Oilfield Services, LLC, "a company Jacam work[ed] with so that it c[ould] work on the Fort Berthold Indian Reservation." Based on these facts, we agree with the district court's legal determination.

Jacam tries to explain how it did take reasonable steps to protect its information, contrary to what the district court held. Jacam argues the district court neglected the additional fact that Jacam "adduced evidence that pricing is not freely shared in the industry, and that customers usually do not share proposal information with competitors." But Jacam produced no testimony showing the industry standard is to maintain the confidentiality of pricing information, only that price sharing is uncommon. At oral argument, counsel conceded that customer-price sharing "does happen time to time," only referring to the practice as "not common" or "rare." That is not enough to show there was an implied obligation within the industry to keep information secret. Indeed, Jacam itself managed to obtain GeoChemicals's pricing information from Slawson Exploration, which allowed Jacam to underbid GeoChemicals.

And though we note Jacam required its employees to keep all information confidential, that is not enough to show Jacam took reasonable steps to keep the information confidential, particularly when Jacam did not require some of its own customers to keep that information confidential. Jacam's combined efforts lacked the reasonableness of the efforts found in *AvidAir*, in which a party labeled its

-12-

documents with "proprietary-rights legends," and there was no evidence the party "actually distributed [the documents] to a party not bound by confidentiality agreements." *AvidAir*, 663 F.3d at 974. Thus, Jacam did not make reasonable efforts to keep its pricing information secret, which means the pricing information documents were not trade secrets which Shepard could misappropriate.

### iii. Tortious Interference with a Contract

Finally, Jacam appeals the district court's grant of summary judgment on its claim that Shepard and GeoChemicals tortiously interfered with the employment agreements held by Jacam and three of its employees. Before the district court, Jacam specified the "interference" was Shepard's and GeoChemicals's soliciting three employees to leave Jacam and work for GeoChemicals. The three employees had an employment agreement with Jacam very similar to Shepard's agreement with HCS. The district court held that encouraging an at-will employee to take another job, without more, was not tortious interference.

Under North Dakota law, "to establish a prima facie case of tortious interference with contractual relations, the plaintiff must show that: (1) a contract existed; (2) the contract was breached; (3) the defendant instigated the breach; and (4) the defendant did so without justification." *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 642 (N.D. 1984). The North Dakota Supreme Court has entertained tortious interference claims even when the interfered contract involves at-will employment, *see Hennum v. City of Medina*, 402 N.W.2d 327, 337 (N.D. 1987) (discussing other authorities), but only if that interference was "improper," *id.* at 338. The North Dakota Supreme Court explained, "a contract at will is usually not protected when the defendant's interference with it is based on any legitimate business purpose and no improper means is used, as where one employer hires away employees of another whose contract rights are terminable at will." *Id.* at 337 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129, at 996 (5th ed. 1984)).

-13-

Thus, the key inquiry is whether Shepard and GeoChemicals lacked a justifiable reason for soliciting Jacam's employees. "Even where the evidence shows a defendant interfered with a contract, the defendant's actions are justified[,]" and thus, not improper, "if they are done for 'legitimate business concerns and did not maliciously seek to damage the plaintiff.'" *Thimjon Farms P'ship v. First Int'l Bank & Tr.*, 837 N.W.2d 327, 334 (N.D. 2013) (quoting *Fankhanel v. M & H Constr. Co., Inc.*, 559 N.W.2d 229, 231 (N.D. 1997)). "[J]ustification can be decided as a matter of law by showing a defendant was justified by a lawful object which he had a right to assert." *Hilton v. N.D. Educ. Ass'n*, 655 N.W.2d 60, 68 (N.D. 2002).

Jacam cannot point to any independently wrongful act from Shepard and GeoChemicals. Jacam tries to assert Shepard's wrongful act was his breaking his own HCS Agreement's non-solicitation obligation, but as discussed, there was no enforceable obligation requiring Shepard refrain from soliciting employees. Thus, neither Shepard nor GeoChemicals unjustifiably solicited the three employees. As recognized by *Prosser & Keeton*, "[w]here the contract interfered with is terminable at will, . . . the privilege of competition has been recognized," and that privilege "extends to inducing the termination of agreements terminable at will, whether they concern employment or other relations." *Prosser & Keeton* § 129, at 987–88 (footnotes omitted). As the district court concluded, "[t]hat the three employees left [Jacam] in order to work for a competitor in North Dakota is not a breach of contract. It is simply free market competition of the kind readily embraced by a right-to-work state like North Dakota."

Jacam has one additional argument. For the first time on appeal, Jacam raises a new theory of tortious interference: Shepard and GeoChemicals tortiously interfered with the employees' non-disclosure obligations when Shepard asked them to send him customer pricing information. Jacam did not articulate this theory of interference in its amended complaint, nor did it present this theory to the district court. To raise this argument now ignores our general rule that "a party cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment[,]" *Cole v.*

-14-

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 533 F.3d 932, 936 (8th Cir. 2008), and Jacam does not argue why any exception should apply, *see Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc.*, 809 F.3d 1018, 1022–23 (8th Cir. 2016). Jacam does not develop this argument any further in its reply brief even though Shepard explicitly asserted Jacam waived it. Nor did Jacam address it during oral argument. Therefore, we will not address it here. Thus, we agree with the district court that Jacam's tortious-interference claim fails.

## B. GeoChemicals's Cross-appeal

GeoChemicals appeals the district court's grant of summary judgment to Jacam on its claim that Jacam tortiously interfered with GeoChemicals's business relationship with its customers, mainly Continental Resources. Continental was a customer of Premier Chemical and Oilfield Supply, LLC—a company GeoChemicals bought out on June 1, 2019. GeoChemicals hoped to keep Continental as a customer. In an email sent June 3, Continental expressed its reciprocal desire to keep GeoChemicals as its "new vendor." But shortly before GeoChemicals and Continental could sign a new master service agreement, a Jacam manager met with a Continental representative. At the meeting, the manager told the representative that Shepard had a non-compete agreement with Jacam, which led the representative to exclaim Shepard had "flat lied to my face!"[5] A few days later on June 11, Continental informed GeoChemicals that its legal team advised it "to not move forward with onboarding GeoChemical[s] . . . due to legal matters."

GeoChemicals alleges the unspecified "legal matters" was the Jacam manager informing the Continental representative that Jacam held a non-compete agreement

---

[5]The Jacam manager relayed this purported exchange in an email to other Jacam executives. The manager summarized, "[I] [h]ad lunch with [the Continental representative] Friday and let him read the [non-compete] and it was a 360 degree turn around about [Shepard] and [GeoChemicals]. He had point blank asked [Shepard] about a non-compete with Jacam and [Shepard,] in [the representative's words,] FLAT LIED TO MY FACE!"

-15-

with Shepard, suggesting Shepard's involvement with GeoChemicals violated Jacam's contractual rights. According to GeoChemicals, this was, at best, a misleading half-truth; even if Shepard had signed a non-compete agreement with Jacam, North Dakota law voids any such agreements, *see* N.D. Cent. Code § 9-08-06, so the non-compete was unenforceable. In reviewing GeoChemicals's claim, the district court held that even though "[t]he conduct and statements of [Jacam] upper management is without question retaliatory, spiteful, vindictive, and unrelentingly bullish in nature," the Jacam manager did not do anything independently tortious because "a self-serving expression of an ill-advised lay opinion [is] not in and of itself actionable." GeoChemicals appeals that determination.

Under North Dakota law, to prevail on a claim for unlawful interference with business:

> [A] plaintiff must prove the following essential elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted.

*Trade 'N Post, L.L.C. v. World Duty Free Ams., Inc.*, 628 N.W.2d 707, 717 (N.D. 2001). An "independently tortious" act is "conduct that would violate some other recognized tort duty" or otherwise violates state law. *Id.* at 721 (quoting *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001)). For this appeal, we need only examine the third element: whether Jacam committed an independently tortious act that interfered with GeoChemicals's relationship with Continental.

GeoChemicals asserts the independently tortious act comes from the Jacam manager's statements, which were "fraudulent" and "meant to deceive" the Continental representative into thinking Jacam had an enforceable non-compete. Generally, "a misrepresentation of law is not actionable fraud in tort." *Nodak Oil Co. v. Mobil Oil Corp.*, 533 F.2d 401, 406 (8th Cir. 1976). Yet, some statements are

-16-

mixed statements of both law and fact, such as the assertion a contract exists; if one party tells another party a contract exists, this implies to the other party "that all of the action and agreement necessary to the formation of a contract ha[s] been completed." *Id.* at 407. *See also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 756 (2023) ("[S]tatements involving some legal analysis remain actionable if they carry with them by implication an assertion about facts that justify the speaker's statement." (internal quotation marks and alteration omitted)).

Assuming the Jacam manager's assertion could be an actionable statement, GeoChemicals still must establish Jacam committed all the elements of the independent tort of "deceit," which occurs when a person "willfully deceives another with intent to induce that person to alter that person's position . . . ." N.D. Cent. Code § 9-10-03. "A deceit within the meaning of section 9-10-03" not only requires an untrue factual assertion, but also that the speaker "does not believe it to be true," "has no reasonable ground for believing it to be true," or "gives information of other facts which are likely to mislead for want of communication of that fact." *Id.* § 9-10-02(1)–(3) (defining deceit). *See also Nodak Oil*, 533 F.3d at 407 & n.8. A "failure to communicate" an additional fact—such that a signed non-compete is void—"is fraud by suppression of a fact by one who has given other facts and the failure to disclose this additional fact is likely to mislead." *Id.* at 407. Thus, GeoChemicals's case depends on GeoChemicals being able to identify anything in the record that creates a dispute of material fact as to whether the Jacam manager knew the non-compete was entirely unenforceable or had no reasonable ground for believing the non-compete to be enforceable.

GeoChemicals did not put forth any evidence suggesting the Jacam manager knew his statement to be untrue or had no reasonable ground for believing it to be true. Nor did GeoChemicals even argue how this court could infer the manager's knowledge. Even after Jacam squarely put the intent-to-deceive deficiency at issue in its response brief, GeoChemicals did not alert this court to anything in the record to support a jury finding the manager knowingly and intentionally deceived Continental. We cannot hold Jacam liable for tortious interference simply because

-17-

the Jacam manager made a factually untrue statement—even if the manager only made that statement out of a mistaken belief about the law—because "[f]raud is *never* presumed, even under circumstances that give rise to suspicion of fraud." *First Union Nat'l Bank v. RPB 2, LLC*, 674 N.W.2d 1, 8 (N.D. 2004) (emphasis added). Rather, "[t]he burden is on the party asserting fraud to establish the elements of fraud[,]" *id.*, one of which "is an intent to deceive," *id.* (quoting *Hablas v. Armour & Co.*, 270 F.2d 71, 77 (8th Cir. 1959)). Without proof on that element, there can be no claim for deceit.

Because GeoChemicals makes no meaningful argument that the Jacam manager had the requisite "intent to deceive," GeoChemicals fails to show the manager's statement to the Continental representative constituted an independently tortious act. Without an independently tortious act, GeoChemicals's claim for tortious interference necessarily fails. Thus, summary judgment was appropriately granted to Jacam on GeoChemicals's claim for tortious interference. *See Reeder v. Kan. City Bd. of Police Comm'rs*, 733 F.2d 543, 548 (8th Cir. 1984) ("We have power to affirm the judgment below on any ground supported by the record, whether or not raised or relied on in the District Court.").

## III. Conclusion

We affirm the district court.

_____